134169 FTC v. EMA Nationwide Incorporated et al. Oral argument not to exceed 15 minutes per side. Ms. Fleming for the appellants. Good morning. Good morning. May it please the Court, my name is Jennifer Lesney Fleming and I'm counsel here on behalf of the appellants. I would like to reserve three minutes for rebuttal. All right. The primary issue on appeal, Your Honors, is whether the district court abused its discretion in denying the Rule 56D motion for more discovery and entering summary judgment against appellants when the appellants had repeatedly notified the district court that they didn't have any access to their company files, their company records, their customer files, and therefore didn't have any of the files needed to oppose summary judgment. There are two main reasons that the district court abused its discretion in denying that Rule 56D motion. First and foremost, Your Honors, it's a fundamental principle of our system of justice that every defendant has the right to be heard and to present a defense. And it therefore follows as well in the case law that summary judgment is deemed by the courts to be premature when a party has not had the opportunity to conduct full discovery. Here, within 48 hours from the filing of the FTC's complaint in this manner, all of the records and all of the computers were seized during a raid in Canada. And from that time that they were seized within days of the complaint, the defendants had no access to any of their files or records until after the date the summary judgment was in fact rendered in the case. More specifically, the district court abused its discretion in refusing to grant the Rule 56D motion for discovery because appellants showed the district court that they met all of the elements that were required for a 56D motion. Is that really an appropriate issue for us to delve into at this point? And I say that because your client did not, as I understand, file a response to the motion for summary judgment in the district court. Is that right? Your Honor, that's correct. They filed a Rule 56D motion for more discovery. Well, yeah, but you have to file some kind of a response to a dispositive motion, and your client didn't file any response. And you could have, in your response to the motion for summary judgment, if you had cared to file it, indicated that you couldn't prepare an adequate response because you needed those files, or you could have said what was in the files because, at least in a general way, because your clients would know what their business activity was, and they would know the kind of documents they needed to defend the case. But instead, your client just didn't file a response to the summary judgment motion. There is an argument that you've sort of waived a lot of your rights by not filing that response. What would you say to that? Well, Your Honor, again, they did file the Rule 56D motion requesting more time in order to respond to the summary judgment motion. That is in accord with the civil rules. When a party needs discovery to respond to summary judgment, that is an appropriate motion to make, which was made here. And with respect to having waived claims, and I was going to move to the issue of summary judgment itself and whether that was properly entered or not, we're not looking to raise new arguments or inject new facts with respect to the underlying granting of summary judgment. But even when a motion for summary judgment is unopposed, the court still has to discharge its burden and make a determination that there are not material issues of fact and dispute. And even under that standard, we maintain, Your Honors, that the court, the district court, did not meet that burden even in the absence of a summary judgment opposition. Well, it's hard often for the district court to determine that if a party doesn't respond. And you could have responded at least to say, well, if this discovery were allowed, we could show that so and so and so forth. But you didn't do that. Well, Your Honor, that was done fully, though, in the 56D motion. There was a declaration from the lawyer who handled the appellant's case below, a sworn declaration in which he detailed all the discovery that was needed and why it was needed. He detailed the fact that all the customer files had been taken. And, Your Honors, the issue here as well is that the issue in front of the district court on summary judgment was whether there were misrepresentations made, whether the consumers relied on those representations. What the appellants were trying to get there is the basic documents that detailed the nature of the discussions with those consumers, that detailed what the consumers understood, what they were told. Those were all the documents they didn't have access to. And that's what they told the district court they needed in order to oppose summary judgment. They told them that repeatedly. They told them, the district court, that within days of the original filing of the complaint. They told them at the point. You had a great deal of information from the FTC's discovery. And, for example, as far as the impressions of customers or what was said, I mean, you were free to depose them. You had their names based on the FTC's discovery. So you were, the documents in your companies that were formerly in your companies, among the records of the companies, were not the only source of discovery in this case, correct? Your Honor, we knew some of the names of the consumers. We didn't know all the names of the consumers. Could appellants formally have gone forward and started taking depositions? The answer is correct. But they had no documents to cross-examine those witnesses with. The only documents, and you'll hear this from the FTC, you know, the FTC will argue, well, yes, there were some documents. And what they mean by that, Your Honors, is that they had submitted some documents in connection with their motion for preliminary injunction at the beginning of the case. And that they also used and attached exhibits for their motion for summary judgment. So, effectively, what they're telling us, Your Honors, is that the opposing party in discovery should only be left to using documents that the other side has cherry-picked, that they've determined are the most compelling documents for their case. That's what our client had here. They did not have the universe of the documents that they needed to show that, in fact, the consumers were not misled. And that's what they were seeking to obtain and never got. Do you have all those documents now? We do, Your Honor. And probably the greatest strike of irony here, they obtained the documents from the Canadian government the day after summary judgment was rendered. Appellants started that process of trying to get those seized documents within days of the filing of the complaint. Continued to work at it, were very diligent, were not dilatory, and as a result of all their effort, ultimately got those documents. All our clients are asking for is the ability to now use those documents, to review those documents, to conduct discovery based on those documents, and to have it be a fair and level playing field. Have you made a proffer in the record to show that if you'd had those documents at the time the motion was made that here's what you would have shown? We have not, but we, again, did it in our 56D motion for additional discovery, and outlined those. We've also outlined in the appellate briefing as well how some of the documents even before the district court did show that there were issues of fact even on those documents. And that's the alternative ground for our appeal as well. Again, even in the absence of a summary judgment opposition, the record before the district court showed that there were genuine issues of material fact. For example, the district court relied on certain declarations from consumers to state that there had been misrepresentations made. So, for example, they relied on a declaration from an individual who indicated that she was instructed to stop paying her monthly bills while the company negotiated their debt settlements. The document that was attached to her declaration, however, which was a debt appraisal guide that had been provided by the appellants, clearly advised in a highlighted box that not making payment on the debts would have a negative impact, and that New Life Financial does not advise its clients to not pay their bills or honor their commitments. This wasn't in fine print. This was a large disclaimer there. This contradictory evidence should have created an issue of material fact in the mind of the district court. And, in fact, there's other examples that we've briefed for your honors as well. For example, they cite and included a declaration from another customer who had indicated that she was not told that she could be turned over to a third-party debt negotiation service. Again, the agreement expressly provided that, in fact, the appellant would turn customers over to third parties who would attempt to negotiate a settlement on behalf of them. All of these issues should have raised a question of fact, especially when you realize and appreciate that the district court has the obligation to view the facts in a light most favorable to the defendant, whether or not they file an opposition to summary judgment or not. When did you file the, by you I mean your client, the request for production of documents? I thought I saw something where you didn't file that until a month before the discovery cutoff. Your Honor, there were earlier attempts made informally to obtain documents. I don't mean the informal things. I mean when did you actually file a discovery request pursuant to a request for documents? Those documents were correct approximately a month before the discovery cutoff. The point, Your Honor, however, is those documents were not ultimately what we needed. The appellants needed the documents that were in the possession of the Canadian government. We did ultimately obtain documents from the FTC. But again, those are the documents that were the cherry-picked documents. Wait a minute. I'm not following you. You waited until a month before discovery closed to make a request for production of documents, and you're saying that the documents you formally requested were not the documents you needed? They were not the documents that were seized in Canada. Well, why didn't you include those unless you're saying that, well, why didn't you include that in your discovery request? Because the FTC was not in possession of those documents. The appellants were trying to work with the FTC to help them cooperate so that they could get the Canadian government to give us the documents. Okay. They didn't have them either. Okay. Well, the Canadian government is not a party to this lawsuit. Is that right? Correct. So you couldn't blame the FTC for not turning over the documents in possession of the Canadian government, could you? We think that they could have cooperated more, which would have assisted in getting the documents. You know, their position was they would not cooperate in helping us get those documents. But at the end of the day – But if you had filed a formal discovery request even directed to the FTC and the FTC claimed they didn't have the documents, there would have been some more compulsion on the part of the FTC to try to cooperate in getting the documents for you or at least provide an explanation as to why they couldn't do that. That's why I don't understand why you waited so late to file a formal request and then didn't somehow address in your formal discovery request the documents that were in possession of the Canadian government, especially if you suspected that perhaps the FTC also had access to those documents. They did not have access to those documents, and the Appellants Council I think were working on getting the documents through the entity that they knew had the documents. The FTC did not have them, and that was reflected with the documents that we did ultimately receive from them. They were customer complaints that they had put together that were cherry-picked documents that were not the universe of documents that were necessary to defend against the claims that were ultimately made here. I see my time is up. All right. Thank you. Thank you. You may proceed. Thank you. Good morning. Good morning. I'm David Zeradsky for the Federal Trade Commission. May it please the Court. This is a case about deception on consumers on taking $5.7 million away from consumers by making false pretenses in websites, in sales scripts, and in information provided to those consumers. Evidence of that, extensive evidence, was before the trial judge. And in fact, usually we can even go in and say, here's the sales script. It's deceptive. We didn't have to even do that because we went out and we got declarations from the consumers themselves about what their net impression was. Net impression is the test. So the judge had plenty of evidence. We didn't have documents from Canada either. We would have liked to have them as well, but we did our job. We did discovery. Those submissions were made to the judge prior to the decision on the motion for summary judgment? Yes, sir. And there was simply no response from the other side? That's correct. But they responded by filing a motion under 56D. Wouldn't the judge need to postpone the decision until they got those records under the rule? Well, Your Honor, that's right. They did file that motion, but first of all, they filed it after the deadline for their opposition to summary judgment. They could have filed it even during the discovery period. They didn't do that. They never filed it until after they had already missed the deadline for opposing summary judgment. But more importantly, it's an abuse of discretion standard. And so the judge, you know, if I had been the trial judge, maybe I would have said, okay, take another couple of weeks. The judge is actually well known for moving his docket quickly. That's his prerogative. And here there was no reason to postpone things. In fact, the same day that the defendants filed their 56D motion, the judge issued an order stating that the main defendant, Mr. Michaels, would be held in contempt if he didn't come in with the financial disclosures that he was supposed to be providing. The idea was he was supposed to be providing information showing that he wasn't dissipating his assets. And he had stopped providing those filings. And the judge said, if you don't give those filings to us, we're going to hold you in contempt. The same day, these folks came in with their motion to say, we need more time, maybe six more months. We need to gather more evidence. The judge said, come on. I can't put words in the judge's mouth, but certainly one of the issues we were concerned about was that consumers would not get the redress they'd be owed because the assets would be dissipated. So there was plenty of reason. But going even further, if you look at the factors that this court has established for when more evidence should be gathered, they don't meet any of them. The main one is they'd have to come in and say, if we'd had more evidence, we would have been able to reach a different outcome. And the evidence that they say they want has to do with customer contracts, customer records. Well, the customer contract by itself, they may have made disclosures saying this, that, and the other thing. But that itself doesn't tell you what the net impression was. We had plenty of information about the net impression, not just based on the contracts, but based on all of this other information. And so the information from their files may or may not have helped with that. But it was within the judge's discretion to look at what was already there and say, you know, there's not really a genuine issue of fact. We've got all these consumers explaining why they were told all kinds of good stories about how defendants would help them, and no help came. Interestingly, they say there was a disclosure, there was a disclaimer that was clearly provided in one of the attachments to one of our declarance statements. The disclosure comes on page 22, I believe, of a document that says debt practice guide. It doesn't say this is part of your contract, it says guide. It's on page 22, it's in a shaded box, and it was given to that consumer after she had already signed the contract. So after you sign a contract, somebody gives you a disclaimer and says, by the way, don't believe what our salesman told you when he sold you the product. That doesn't dispel the net impression. And she had already... It was before the district court at the time of the motion for summary judgment, wasn't it? Yes, sir. In fact, it was... That's right. In fact, it was filed at the very beginning of the case with our motion for a TRO. And so the defendants had a copy of this declaration and this document going back to, I believe, October. So they'd had it for seven or eight months, and they didn't even call this woman to depose her. If they really thought this was a useful theory, they could have said, look, what are you talking about? They didn't conduct any depositions. They didn't ask the FTC for any additional records. If they had said, you're cherry picking, you're holding back, they would have gotten it. And in fact, we did give it to them, and most of what we gave them, they received three weeks before their deadline for opposing summary judgment. They didn't use it. On summary judgment, the moving party has to make a prima facie case and has to come in with sufficient information to satisfy the burden of proof. And the judge, of course, has to look at that and weigh that evidence. If these parties didn't have facts to present, at the very least they could have come in with an argument saying, look, we don't have the facts at this point, but we can tell you that on a prima facie basis, they haven't made their case because, and then presented these legal arguments. They're not very good legal arguments, and they're presenting them now, but they didn't even present them then. And of course, the burden of proof shifts once the moving party makes their prima facie case. And the defendants can't just sort of say, well, you didn't rule out every possibility. The defendants have the burden under the Anderson case, Matsushita, Catret. There are these cases that say, on summary judgment, the defendants have a burden to carry, to come in not just with allegations, not just with saying, well, there are all these questions we don't know. So they have to come in with facts of their own. There was nothing. There were no affidavits. There was no attempt to gather anything. So in my view... What about the issue of prejudice? Once they got those, they finally did get those documents, I guess your opposing counsel is claiming that there was information in there that if they had had earlier, they would have come out better on the motion for summary judgment or just defending the case generally. So was there any prejudice that they suffered that you can identify or reasons why you would say they didn't suffer any prejudice? Well, Your Honor, there's always more information out there. You can always go out and track down more leads. We could have used more information. We tried to depose their clients, and they stalled and delayed until after this deadline. It doesn't mean that there was prejudice. They had every opportunity to gather information in exactly the same way that we did for over five months, and they didn't try. They didn't use the information that they had. Bless you. So no, sir, I don't think there was prejudice. And as was pointed out during my colleague's presentation, we didn't have this information either. They didn't ask us to provide what information we had. So where's the prejudice? When you say they didn't ask you to provide the information you had, are you saying that their requests for information went to the documents in possession of the Canadian government but that they didn't submit document requests directed to the FTC? Is that what you're saying? They submitted document requests to the FTC just a few weeks before the deadline for discovery, and we delivered it to them in a timely manner. But they have had time to respond to the motion for summary judgment with what you gave them? Absolutely. Sure. I mean, for that matter, this trial judge, again, he has the discretion to manage his docket. He said instead of the typical 30 days, we're going to require a response in 14 days. We don't want to let this drag out forever. Okay, that's pretty aggressive. It would have been tough for us as well. But that was the ground rule. That was the case management order. These folks didn't object to the case management order at the time. They did say, we don't have these documents, but they never said, and we have no opportunity to get any other documents any other way. They could have gone to their e-mail provider and said, give us copies of our e-mails. We know there are papers and computers up in Canada, but there's got to be a copy out there somewhere in the Internet that we can get. They didn't go to their banks. In fact, they had bank records that we had to compel them to turn over, so they didn't have nothing, as they claim. They could have gone to their banks and demanded records. These days, there's no situation where the only copy of a record is in one location. It's really a red herring. It's really a distraction because they didn't have a case. In fact, there's nowhere that they claim that they didn't do what they actually did. They sent out salespeople to make these pitches. They convinced consumers to sign up for services. They said, we'll work with third parties to reduce your debt. Well, third parties who? Doesn't that mean the third parties who are going to be reducing my debt? I don't know what it means. Maybe it means something else. The judge made a decision based on the facts that were there, saying the net impression was created that these folks were going to do something to help these consumers reduce their mortgages and that the payments that were being made were going to reduce their mortgages or their credit card bills or what have you. By the way, did you depose Mr. Michaels and Mr. Benheim, the president and vice president of these companies? We actually did depose them, but we deposed them after the time period for, actually it was after we'd filed our motion for summary judgment. So we couldn't use that information. And then the judge came down. Okay, but when you did depose them, did they say they couldn't provide testimony directed to these practices, these allegedly unethical practices that was the subject of the litigation because they didn't have access to these documents? What did they have to say about that in their depositions? Well, I may have to consult with my co-counsel who handled those depositions, but my understanding is that they essentially didn't provide any information because they were claiming the Fifth Amendment privilege. Okay, so, and again, they had the right to invoke their Fifth Amendment privilege. And, in fact, the trial judge didn't even rely, which he could have done, on that as weighing against them, as in take that as an inference, which he could have done, but he didn't. The judge did a very careful job of wading through the evidence, and you can see the citations, all over the district court's order. So it's a very solid order, and we ask that it be affirmed. How soon did the judge render summary judgment after the deadline had passed? After the deadline for discovery had passed? Yes, well, the deadline for responding to the motion for summary judgment. The deadline for responding was July 22nd of 2013, and the summary judgment order was issued August 27th. So about 30 days had passed, about a month. That's right. That's right. If you have any further questions, I'm happy to answer them otherwise. Okay. Oh, I guess not. All right, I think that's fine. Thank you very much. Your Honor, you've heard from counsel for the appellee that the net impression is the test that the courts look to determining whether, in fact, there was a misrepresentation made to the consumers. Here, we only had the net impression evidence that the FTC put forward. There was no evidence of the net impression that would have been created by all the other business records and customer files and notes that were in possession of the Canadian government. All of those had been seized and were not available to be used in order to establish what would have been the true and correct net impression of really what happened here. Ken, is it really that clear that that's the way this net impression concept works? If the net impression only under the law, if that only extends to a particular misrepresentation and each ad sort of stands on its own merits, you can't just lump everything in one pot and say that all these documents that you didn't get, you can put all that together in some kind of cumulative way. You would disadvantage based on this net impression. Wouldn't you have to let us know what particular misrepresentation you were referring to and then what information or documentation would pertain to that particular misrepresentation? Yes, and that was done, in fact, in the Rule 5060 motion and in the declaration. It was described what kind of documents were necessary and why, including, for example, whether there was a misrepresentation about the nature of the services offered. Well, the documents that had been seized and were in Canada would have described what the nature of those services were. They would have described what the representations were to the consumers. Again, the only evidence before the district court was what the FTC wanted to put forward as to what the representations were. Even within that data, as I've explained, there were questions of fact. But the importance here is that the district court did not have all the information and appellants were not able to put forth any evidence to describe the net impression. And courts, in fact, have held that the issue of this net impression is typically a question of fact that should not be decided on summary judgment. But the district court did it here. Aren't you disadvantaged a little bit by the facts of this situation? And by that I mean it sounds as though your defense in part is the claim by your client that they didn't know what misrepresentations their own employees and contractors were making to the consuming public. And if that's a little bit hard to swallow unless the company was just being mismanaged somehow and these people were not being supervised. No, Your Honor, I don't think that's what we're saying. We're saying here is that the records would have showed that there were no misrepresentations, that they understood the scope of the services, that they weren't told not to pay their creditors, that they were, in fact, told the opposite. Those are the documents that we're looking to get that would have showed all that information. Well, you know, that's also, that's capable of proof through either, if what you want to show is what they were told, that's capable of proof either through testimony or affidavits of customers, but it's also subject to proof through testimony of representatives of the company or their affidavits. And you didn't choose to present any of that. I mean, documents are hardly the only source of that sort of information. Well, to go against the particular customer affidavit that the FTC had gathered where a particular customer had said, look, I was misled and I was told this, you know, the appellants had thousands of customers. They certainly can't recall for a specific customer what the representations were made. They need the documents, and that's simply what they were trying to get. A brief extension of discovery here would have enabled the appellants and the appellee to have the case decided on the merits, and that's all that we're requesting, Your Honors. Well, it wouldn't have been really decided on the merits because you're, the most knowledgeable people from your side were not testifying because they had taken the fit. Well, the corporations, however, would have had an obligation to testify. There's no Fifth Amendment privilege with respect to the companies. Yeah, but I mean, of course, the FTC is alleging that these two individuals controlled all these various corporations, that most of these, that all these things were controlled by the same people. Or is that factually untrue? Right. There would have been evidence that would be put in eventually that that is not true, and, in fact, the other defendants had more day-to-day involvement on that. Okay, okay. I think we have your position in hand, and, unfortunately, you're out of time. Your red light is on there. Thank you very much. Thank you, and the case is submitted.